Shaw, C. J.
These are actions on policies of insurance, one on a building, the other on personal property, consisting of leather and other materials for the manufacture of shoes, and manufactured stock in the same building. It is admitted that the building was burnt down, and the stock in it, within the time, and that the defendants are liable, unless they are discharged by the circumstances set forth in the facts agreed, on which the case is submitted. These circumstances are, that on the evening preceding the fire, a lottery of two hundred and sixty tickets, at one dollar each, was drawn in one of the rooms in the building, and that about fifty persons were present in the course of the evening. This use of the building was with the consent of the plaintiffs, both of whom were present, and each held a ticket, received of the persons to whom such consent was given. The part of the building used was a single room, in the second story, sixteen by twenty feet, in which no stock was kept. It further appears. that the tickets not having been all disposed of, those remaining were raffled for, at the drawing of the lottery, but *584 no consent was given by the plaintiffs to that, nor had they any knowledge of any such raffling.
It is then agreed, that upon a trial there would be conflicting testimony, as to whether or not there was dissatisfaction at the meeting, as to the proceedings in the drawing. There was no open altercation, nor was there any disturbance whatever. It is agreed, if admissible, that one Duffy set the fire which consumed the building; and that it took place between three and four o’clock in the morning after the drawing of the lottery; that Duffy attended the drawing, and had a ticket.
The court are unable to perceive in these circumstances any ground of defence to this suit on a contract made by the defendants to indemnify the plaintiffs against loss by fire.
In the first place, this contract of insurance was made on good consideration, and made to accomplish a good and lawful purpose. It does not therefore come within that class of cases, where the consideration is a violation of law or good morals, or where the object and effect of the contract will be to promote or advance some unlawful purpose or business, which would itself be a violation of law or immoral; as that of letting a house to a woman of ill fame, thereby aiding, exciting and encouraging a violation of the law, as in the case of Commonwealth v. Harrington, 3 Pick. 26. So here, if the suit were for the rent of rooms, to be used for drawing lotteries, or a single lottery, the allowing a plaintiff to recover judgment would be to lend the aid of the law to enable one to reap the fruits of an unlawful bargain.
But the ground taken distinctly is, that the building insured was used for a purpose not contemplated by the policy, and also for an unlawful purpose. In regard to the first, the argument proceeds on the ground, that as the building described in the policy was described as a shoe manufactory, the occupation, or even the temporary use of it, for another purpose, would annul and vacate the policy. On the contrary, we suppose the law to be, that the assured may occupy and use his estate for any other lawful business or purpose not restrained by any provision or condition in the contract, and which does not increase the risk. And we understand that it *585 is not suggested in this case, that any such change was made in the structure or use of the building, as within its terms to vacate the policy; and if any such change had been made and relied on, it was a fact to be distinctly put in issue and tried by a jury. But the argument is, that being insured as a shoe manufactory, a business well understood, it presumes no assemblage of persons on the premises, but the contrary; because the resort there of numbers, must interrupt labor, and may endanger the security of the stock by exposing it to depredation. This appears to us to be taking too limited a view of the nature of the contract of insurance and the rights of the assured. Suppose in a spare large room, like the one described, a periodical auction sale of shoes and boots, then own and others, were made, which would bring an assemblage of persons there, creating no increased risk of fire, would it avoid the policy? Suppose that such spare room were let, occasionally or periodically, for a school, a lyceum or a conference meeting, it could not affect the policy.
But it comes back to the original ground, that the building was used for an unlawful purpose, and so there was an unlawful and unwarranted use of the building. This is not speaking with strict accuracy; the law, which forbids the setting up or drawing of any lottery, and which renders it penal for any person who shall knowingly permit the drawing of any lottery in any house, shop or building owned or occupied by him, does not subject the building to any forfeiture; it renders such person guilty of a misdemeanor, and personally liable for a penalty. It is therefore an unlawful use of the house only in the sense in which every person may be said to make unlawful use of his house, who commits an offence under its roof against good morals or positive law. There is no natural, probable or actual connexion between the offence committed and the loss by fire. If indeed it were in the direct commission of some unlawful act, by the assured, that the fire was kindled, so that the relation of cause and effect could be shown between the unlawful act done and the loss occasioned, it would present a very different question.
The cases cited in the argument for the defendants do not tend to sustain the defence.
*586 Richardson v. Maine Ins. Co., 6 Mass. 102. The cases of a policy on the realty against loss by fire and of one on a vessel or cargo, personal property, are not very analogous, because the direct use and employment of the latter may be infinitely various, to be controlled and directed by the owner or manager. The case cited recognizes the distinction between a policy made to protect a traffic, prohibited by the sovereign of the parties, and that which might violate the law of another country, or the law of nations. In case of its being a voyage in violation of a municipal law by which they are bound, the voyage is illicit, and all insurances on such voyages are void; for the law will not allow any effect to a contract made to protect a traffic which it has prohibited. In that case, the very contract sought to be enforced was void in its inception, because illegal in its inception. The case of Warren v. Manufacturers' Ins. Co., 13 Pick. 518, is not more in point. On the contrary, it was there held, that a non-compliance with a positive law of the United States, in the conduct of the voyage, did not avoid the policy.
The distinction between cases, where contracts are or are not void, as against law, is well stated by Marshall, C. J., in Armstrong v. Toler, 11 Wheat. 271. The principle established is, that where the consideration is illegal, immoral and wrong, or where the direct purpose of the contract is to effect, advance or encourage acts in violation of law, it is void. But if the contract sought to be enforced is collateral and independent, though in some measure connected with acts done in violation of law, the contract is not void.
In the present case, it appears to us, that the illegal conduct of the plaintiffs, in assisting at the drawing of a lottery, or in permitting one to be drawn on their premises, although it subjected them personally to a penalty, did not affect their contract with the insurance company, but was wholly independent of it and disconnected; as if they had committed any other misdemeanor or indictable offence under the same roof; and therefore did not avoid the policy, or afford any ground of defence to the company. Any other rule would extend the penalty for a violation of the law much beyond that pre *587 scribed by the law itself, and deprive the party of his civil rights, in favor of third parties in no degree affected by 'such unlawful acts. Judgment for the plaintiffs in both cases.
O. P. Lord, for the plaintiffs.
N. J. Lord and N. W. Hazen, for the defendants.